# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| BENEPLACE, INC., <br>   *Plaintiff* <br> v. <br><br> DAVITA, INC. and AON HEWITT <br> HEALTH MARKET INSURANCE <br> SOLUTIONS, INC., <br>   *Defendants* | Case No. 1:21-CV-00070-RP |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE ROBERT PITMAN
   UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Aon Hewitt Health Market Insurance Solutions, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, filed January 29, 2021 (Dkt. 5); Defendant DaVita, Inc.'s Motion to Dismiss, also filed January 29, 2021 (Dkt. 7); Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery, filed February 4, 2021 (Dkt. 14); and the associated response and reply briefs. On February 12, 2021, the District Court referred the motions to the undersigned Magistrate Judge for disposition and report and recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

## I. Background

Plaintiff Beneplace, Inc., a Texas corporation with its principal place of business in Austin, Texas, "provides insurance and human resources services to employers." Plaintiff's Original Petition ("Petition") Dkt. 1-3 at 6-37, ¶ 15. Specifically, Beneplace provides customized insurance plans and discount programs allowing employees to save "on cars, home electronics, financial services" and other items. *Id.* ¶ 16. DaVita, Inc. ("DaVita"), a Delaware corporation with its

principal place of business in Denver, Colorado, is a healthcare provider that delivers dialysis and related treatments to patients with end stage renal disease at clinics it owns and operates throughout the United States.

On September 1, 2010, Beneplace and DaVita entered into an agreement in which Beneplace agreed to provide its services to DaVita and its employees. Dkt. 1-3 at 21-35 (the "Agreement"). Specifically, the Agreement states that Beneplace would present selected goods and services ("Offering Packages") from third-party providers so DaVita could make them available to its employees through a website developed and maintained by Beneplace. Agreement §§ 2(a), 2(b). The Agreement further states that DaVita employees "who wish to purchase goods and services from any provider shall do so directly through the Provider" and not from Beneplace or the Beneplace website. *Id.* § 2(b)(ii). Beneplace did not sell any of its own goods or services to DaVita employees; rather, Beneplace marketed through its website goods and services produced by other parties. *Id.* § 2.

The Agreement further provides that DaVita was not required to pay Beneplace any compensation for building and maintaining the Beneplace website. *Id.* § 3(a); Ex. B to Agreement (stating that Beneplace had "waived" the service fees charged to DaVita). "In exchange for providing access to its employees, DaVita received the benefit of giving those employees more and better human-resources services." Petition ¶ 43. In addition, the parties agreed that "Beneplace will not be entitled to any other compensation from [DaVita] unless [DaVita] expressly agrees in writing to the same." Agreement at § 3(a). Instead, Beneplace would receive commissions from the third-party providers who supplied the goods and services in the Offering Packages to DaVita employees. *Id.* § 3(c).

The initial term of the Agreement was two years. *Id.* § 6(a). After the end of the initial term, "either party may terminate this Agreement for any reason, at any time, upon no less than one hundred eighty (180) days prior written notice to the other party." *Id.* § 6(b). Once the Agreement was terminated, DaVita would have "the right to engage another insurance agent/broker for the Eligible Participants (subject to the rights of Beneplace to compensation with respect to coverage in force at the end of the Term) and to implement any other program for its employees, retirees or others." *Id.* § 6(d)(ii). The Agreement further provides that:

> (iii) [DaVita] shall promptly provide written instructions to each of the Providers of all insurance products in force with respect to an Eligible Participant at the end of the Term to continue to pay all applicable agent/broker compensation with respect to such products to Beneplace for so long as such Eligible Participant continues such coverage in force (even if such coverage remains in force after the Term; and
>
> (iv) Any insurance agent or broker providing services in connection with insurance products offered to Eligible Participants shall be entitled only to such compensation with respect to insurance products first subscribed for by any particular Eligible Participant after the termination of the Term of this Agreement.

*Id.* ¶¶ 6(d)(iii), (iv).

The Agreement also contains a choice of law provision providing that it "shall be governed by the laws of the State of Colorado, U.S.A." *Id.* § 8(a).

On March 5, 2019, DaVita provided Beneplace with written notice of its intent to terminate the Agreement, effective November 2, 2019. Petition ¶ 27. DaVita then hired Defendant Aon Hewitt Health Market Insurance Solutions, Inc. ("Aon"), a California corporation with its principal place of business in Chicago, Illinois, as DaVita's new insurance and human resources broker.

On December 18, 2020, Beneplace filed this suit in Texas state court against DaVita and Aon. *Beneplace, Inc. v. DaVita, Inc.*, No. D-1-GN-20-007612 (53rd Dist. Ct., Travis County, Tex. Dec. 18, 2021). Beneplace alleges that DaVita breached Paragraph 6 of the Agreement by failing

to (1) "properly advise providers of insurance products to continue paying commissions to Beneplace for the renewal of policies in force when the Agreement terminated," and (2) "structure its agreements with any succeeding agent or broker to recognize that Beneplace was entitled to continue collecting such commissions." Petition ¶ 45. Beneplace alleges that DaVita's breach caused Beneplace to be deprived of its right to collect renewal commissions for insurance policies in force when the Agreement was terminated. Beneplace further alleges that Aon tortiously interfered with its existing contractual relations with DaVita. Beneplace seeks monetary damages, exemplary damages, attorney's fees and costs, and a declaratory judgement under Texas law that DaVita breached the Agreement.

On January 22, 2021, Defendants removed this case to federal court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332, and 1441. Both DaVita and Aon now move to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## II. Legal Standards

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. The plaintiff has the burden of establishing jurisdiction. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016). If, as here, the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a prima facie case of personal jurisdiction. *Id.* "Proof by a preponderance of the evidence is not required." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (quoting *Johnston v. Multidata Sys. Int'l Corp.* 523 F.3d 602, 609 (5th Cir. 2008)). In determining whether the plaintiff has presented a prima facie case of personal jurisdiction, the court "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Patterson*, 826 F.3d at 233.

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if the state's long-arm statute permits an exercise of jurisdiction over that defendant and an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018); *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Because the requirements of the Texas long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether the Court's exercise of personal jurisdiction over the defendant would be consistent with due process. *Sangha*, 882 F.3d at 101. In order for personal jurisdiction to satisfy due process requirements, a plaintiff must show that (1) the defendant purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of "fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

A defendant's "minimum contacts" may give rise to either general or specific personal jurisdiction, depending on the nature of the suit and the defendant's relationship to the forum state. *Sangha*, 882 F.3d at 101. A court may assert general jurisdiction over non-resident defendants "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Haliburton*, 921 F.3d at 539.

Because personal jurisdiction is "an essential element of the jurisdiction of a district court without which the court is powerless to proceed to an adjudication," courts must reach the personal jurisdiction issue before reaching claims on the merits. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).

### III. DaVita's Motion to Dismiss

DaVita moves to dismiss for lack of personal jurisdiction, arguing that the Court lacks both general and specific personal jurisdiction over it. The Court addresses each argument in turn.

#### A. The Court Does Not Have General Jurisdiction over DaVita

A district court may exercise general jurisdiction over out-of-state corporations when their "affiliations with the State are so 'continuous and systematic' as to render them essentially 'at home in the forum State.'" *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). The "paradigm" forums in which a corporate defendant is "at home" are the corporation's place of incorporation and its principal place of business. *Id.* In an "exceptional case," however, a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* (quoting *Daimler*, 571 U.S. at 139 n.19).

The "textbook" example of an "exceptional case" is *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952). *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020) (stating that *Perkins* "remains the 'textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum'") (quoting *Goodyear*, 564 U.S. at 928). In *Perkins*, the defendant was a foreign corporation conducting mining operations in the Philippine Islands. During World War II, the mining operations were halted when the Japanese occupied the Philippine Islands. 342 U.S. at 447. During the shutdown, the corporation's president, who also was general manager and principal stockholder, returned to his home in Ohio, where he

carried on "a continuous and systematic supervision of the necessarily limited wartime activities of the company." *Id.* at 448. The company's files were kept in Ohio, several directors' meetings were held there, substantial accounts were maintained in Ohio banks, and all key business decisions were made in the state. *Id.* Because Ohio became "the center of the corporation's wartime activities," the Supreme Court found that suit was proper there. *Tyrrell*, 137 S. Ct. at 1558 (discussing *Perkins*). As the Fifth Circuit has noted, *Perkins* "is the only Supreme Court case where general jurisdiction was appropriately exercised against a corporation, and since *Perkins*, it has become incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Frank*, 947 F.3d at 336. Based on *Perkins*, an exceptional case appears to be "where the forum state is the center of the corporation's activities, even if the corporation's place of incorporation and principal place of business are elsewhere." *Victor Elias Photography, LLC v. Leonardo Worldwide Corp.*, No. CV H-18-2142, 2019 WL 3713724, at *2 (S.D. Tex. Jan. 25, 2019).

It is undisputed that DaVita is a Delaware corporation, and that its principal place of business is in Colorado. Dkt. 23 at 19. Therefore, Beneplace must show that this is an "exceptional case" where DaVita is "so heavily engaged" in activity in Texas "as to render it essentially at home" in Texas. *Tyrrell*, 137 S. Ct. at 1559. Beneplace argues that because DaVita owns or operates 300 dialysis centers in Texas, DaVita has a "business presence" in Texas and therefore is subject to general jurisdiction in Texas. Dkt. 23 at 19. The Supreme Court, however, has rejected this precise argument. In *Daimler*, the plaintiff argued that the court should "approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" 571 U.S. at 138 (quoting plaintiff's brief). The court found that formulation to be "unacceptably grasping," and clarified that the general jurisdiction inquiry "is

7

not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Id.* at 138-39 (cleaned up).

Here, Beneplace has failed to allege or produce any evidence to establish that DaVita has made Texas the center of its business activities. To the contrary, the undisputed evidence shows that DaVita is a large national company with 2,816 outpatient dialysis centers in 46 states and the District of Columbia. Dkt. 23-4 at 3. Thus, while Beneplace allegedly owns or operates 307 dialysis clinics in Texas, that represents less than 11 percent of its clinics nationwide. Because DaVita's operations in Texas make up only a small percentage of its total operations, the fact that it owns or operates dialysis clinics in Texas does not demonstrate that Texas is the center of DaVita's business activities. *See Tyrrell*, 137 S. Ct. at 1559 (finding that defendant's operation of 2,000 miles of railroad track and presence of more than 2,000 employees in forum state did not confer general jurisdiction); *Daimler*, 571 U.S. at 123, 139 (finding that general jurisdiction did not exist where defendant was largest supplier of luxury vehicles in forum state, accounting for 2.4 percent of defendant's worldwide sales); *Cap. Credit Inc. v. Mainspring Am., Inc.*, No. A-19-CV-797-LY, 2020 WL 4043499, at *3 (W.D. Tex. July 17, 2020) (holding that "Defendant Amazon.com Services, Inc., is not subject to general jurisdiction in Texas simply because it does business here—Amazon does business 'everywhere'"), *R. & R. adopted*, 2020 WL 9810026 (W.D. Tex. Aug. 11, 2020); *Victor Elias Photography,* 2019 WL 3713724, at *2 (holding that court did not have general jurisdiction over non-resident Marriott where only 7 percent of its properties were in Texas).

A defendant is not subject to general jurisdiction in Texas simply because it does business there. As the Supreme Court explained in *Daimler*: "A corporation that operates in many places

can scarcely be deemed at home for purposes of general jurisdiction in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." 571 U.S. at 139 n.20 (internal citations omitted); *accord Tyrrell*, 137 S. Ct. at 1559 (stating that "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts. Rather, the inquiry 'calls for an appraisal of a corporation's activities in their entirety'") (quoting *Daimler*, 571 U.S. at 139 n.20). Accordingly, Plaintiff has failed to make a prima facie showing that DaVita's contacts with Texas are so continuous and systematic that it is essentially at home in Texas and thus subject to general jurisdiction in Texas.

### B. The Court Does Not Have Specific Jurisdiction over DaVita

Plaintiff also argues that the Court has specific jurisdiction over DaVita. Specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). For a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state. *Id.* The Fifth Circuit has articulated a three-step analysis for the specific jurisdiction inquiry:

1. whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there;
2. whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
3. whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable. *Id.*

The first factor requires Beneplace to demonstrate that DaVita had sufficient minimum contacts with the State of Texas. For there to be minimum contacts to confer specific jurisdiction,

"a defendant must have purposefully availed himself of the benefits and protections of the forum state such that he should reasonably anticipate being haled into court there." *Carmona*, 924 F.3d at 193. "That requirement is the 'constitutional touchstone' of personal jurisdiction, and ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Beneplace argues that DaVita purposefully directed its activities at the state of Texas because the Agreement specifies that Beneplace's website would be "controlled, operated, and administered by Beneplace from its offices in Austin, Travis County, Texas." Agreement ¶ 8(a). Beneplace contends that because the Agreement identifies Austin, Texas as "Beneplace's place of performance," specific jurisdiction exists. "But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285; *accord Carmona*, 924 F.3d at 193-94. "Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden*, 571 U.S. at 284. Thus, a plaintiff's unilateral activities cannot establish minimum contacts between the defendant and forum state. *Id.*; *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). Beneplace's unilateral activities in Texas therefore are irrelevant.

Moreover,

> merely contracting with a resident of the forum state does not establish minimum contacts. An exchange of communications in the course of developing and carrying out a contract does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986). Otherwise, jurisdiction could be exercised based only on the fortuity that one of the parties happens to reside in the forum state. *Id.*

10

*Moncrief*, 481 F.3d at 311-12. (citations omitted). In *Moncrief*, the plaintiff argued, as Beneplace does here, that minimum contacts exist in a breach of contract case where a nonresident enters into a contract with a known resident of the forum state, if it is reasonably foreseeable that the resident will perform a material part of its obligations in the forum state and thereby cause business activity in the forum state. *Id.* at 312. The Fifth Circuit rejected this argument, finding that "[m]ere foreseeability, standing alone, does not create jurisdiction." *Id.* at 313. Instead, the court explained that it had found minimum contacts to exist over a non-resident defendant that contracts with a Texas resident where Texas "was clearly the hub of the parties' activities," the defendant was actively engaged in various activities taking place in Texas, and there was no choice of law provision designating another forum. *Id.* at 312. Those factors are not present in this case.

It is undisputed that no DaVita employee ever traveled to Texas, or took any action in Texas, in connection with the Agreement. Dkt. 27-1 at 3. Instead, DaVita employees performed their duties under the Agreement from Denver, Colorado. *Id.* While DaVita employees did have periodic phone calls and exchanged emails from Colorado with Beneplace representatives in Texas, such contacts are insufficient to establish specific jurisdiction. *See Moncrief*, 481 at 312. The minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. The Court finds that DaVita's communications with Texas rested on nothing but "the mere fortuity that [Beneplace] happens to be a resident of the forum." *Holt Oil*, 801 F.2d at 778.

Beneplace attempts to argue that DaVita performed some of its obligations under the Agreement in Texas because DaVita connected its companywide internal website, or intranet, to the Beneplace website in Austin, Texas. Such attenuated contacts do not demonstrate that DaVita purposefully directed its activities at Texas. *See Ray v. Experian*, No. 3:07-CV-1114-R, 2007 WL

11

4245459, at *3 (N.D. Tex. Nov. 30, 2007) (holding that accessing or sending data in North Carolina to or from a database which happens to be headquartered in Texas was not a purposeful availment by non-resident defendant of the benefits and protections of Texas' laws); *Laughlin v. Perot*, No. CA 3-95-CV-2577-R, 1997 WL 135676, at *6 (N.D. Tex. Mar. 12, 1997) (finding that accessing published information in California from a computer database service, which happens to be headquartered in Texas, was not purposeful availment).

Finally, the Agreement contains a choice of law provision mandating that "the laws of the State of Colorado" shall govern the Agreement. Agreement § 8(a). The Fifth Circuit has repeatedly relied on such choice of law provisions designating another forum to demonstrate that a defendant did not purposely direct its activities at the forum state. *See Moncrief,* 481 F.3d at 313 (finding that court did not have specific jurisdiction over defendant in Texas based in part on choice of law provision designating that Russian law would control); *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1069 (5th Cir. 1992) (stating that choice of law clause designating English law to govern contract "indicate[s] rather forcefully" that defendant did not purposefully direct its activities toward Texas); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1030 (5th Cir. 1983) (finding that court did not have specific jurisdiction over defendant in Texas based in part on choice of law provision designating that Alaska law would control).

The Court finds that Beneplace's Texas location was irrelevant, and that this suit falls into the category of cases "where mere fortuity that one company happens to be a Texas resident, coupled with that company's unilateral performance, is not enough to confer jurisdiction." *Id.* at 313; *see also Hydrokinetics*, 700 F.2d at 1029 (holding that defendant did not purposefully avail itself of the privilege of conducting business within Texas where it merely entered into a contract with a Texas resident and agreed to purchase goods manufactured by plaintiff in Texas and no

performance by defendant was to take place in Texas, other than perhaps payment for the goods). Beneplace has failed to demonstrate that DaVita purposefully availed itself to the benefits and protections of Texas such that it should reasonably anticipate "being haled into court" here. *Carmona*, 924 F.3d at 193. Accordingly, Beneplace has failed to demonstrate that DaVita has sufficient minimum contacts with Texas to confer specific jurisdiction in Texas.

Given the Court's finding that no minimum contacts exist to exercise jurisdiction over the DaVita, the Court need not consider the remaining specific jurisdiction factors. *See Moncrief*, 481 F.3d at 315. Accordingly, DaVita's Motion to Dismiss for lack of jurisdiction should be granted.[1]

### IV. Defendant Aon's Motion to Dismiss

Beneplace alleges that Aon willfully and intentionally interfered with Beneplace's Agreement with DaVita and induced DaVita to breach the Agreement. Aon, a California corporation with its principal place of business in Illinois, argues that the Court must dismiss Beneplace's tortious interference claim for lack of personal jurisdiction because the Court lacks both general and specific personal jurisdiction over it.

**A. The Court Does Not Have General Jurisdiction over Aon**

As noted, a district court may exercise general jurisdiction over out-of-state corporations when their affiliations with the State are so "continuous and systematic" as to render them essentially "at home" in the forum state. *Tyrrell*, 137 S. Ct. at 1558. Beneplace fails to allege any facts showing that Aon's affiliations with Texas are so continuous and systematic as to render it at home in Texas. The only evidence that Beneplace cites in support of its argument that the court has general jurisdiction over Aon is that Aon has registered to do business in Texas and maintains an agent for service of process in Texas. The Fifth Circuit has specifically rejected the notion that

---

[1] Because the Court finds that DaVita's Rule 12(b)(2) motion should be granted, the Court need not address DaVita's arguments under Rule 12(b)(6).

merely registering to do business and appointing an in-state agent for service of process automatically confer general personal jurisdiction over a nonresident defendant or act as consent to a court's jurisdiction. *See Gulf Coast Bank & Trust Co. v. Designed Conveyor Systems, L.L.C.*, 717 F. App'x 394, 398 (5th Cir. 2017); *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005); *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 180-84 (1992). Accordingly, Beneplace has not demonstrated a prima facie case of general jurisdiction over Aon.

### B. The Court Lacks Specific Jurisdiction over Aon

To demonstrate a prima facie case of specific jurisdiction over Aon, Beneplace must first show that Aon has purposefully directed its activities at Texas and that the litigation resulted from the alleged injuries that arose out of or related to those activities. *Halliburton*, 921 F.3d at 539.

> Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a prima facie case for specific jurisdiction has been presented. Establishing a prima facie case still requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state.

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001). Thus, "the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995).

The Court finds that Beneplace's jurisdictional allegations regarding Aon are conclusory. In its Petition, Beneplace alleges that "Aon committed torts against Beneplace, a Texas resident; those actions were purposefully directed at the State of Texas; and the consequences of those actions were felt in the State of Texas by Beneplace." Petition ¶ 11. Beneplace relies on two email communications between it and Aon to support its argument that the Court has specific jurisdiction

over Aon. Dkts. 14-3, 14-4. These emails do not show that Aon purposefully directed its activities at Texas. Because Beneplace presents no evidence to support its allegations that Aon purposefully directed its tortious activities at the State of Texas, its allegations are conclusory. *See Panda Brandywine*, 253 F.3d at 869 (finding conclusory plaintiff's allegation that defendant knew plaintiff was a Texas resident and knew its actions would intentionally cause harm to plaintiff in Texas).

Even if Beneplace's allegations are not conclusory, they nonetheless are insufficient to establish a prima facie case of specific jurisdiction over Aon. Beneplace argues that because Beneplace is a Texas resident, it was foreseeable that the effects of Aon's tortious behavior would be felt by Beneplace in Texas. *See* Dkt. 14 at 7. Beneplace's allegations, however, "only relate to the foreseeability of causing injury in Texas, which is not a 'sufficient benchmark' for specific jurisdiction." *Panda Brandywine*, 253 F.3d at 869 (quoting *Burger King*, 471 U.S. at 474); *see also Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) ("Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum."). Beneplace has alleged no facts suggesting that Aon purposefully availed itself of the privilege of conducting activities in Texas and invoked the benefits and protections of Texas's laws. Beneplace's only allegations of tortious conduct are Aon's alleged communications with fellow non-resident DaVita about a potential agreement between two non-residents.

Aon's alleged actions have no relation to Texas other than the fortuity that Beneplace is a resident here. *Panda Brandywine*, 253 F.3d at 869. This is insufficient to exercise specific jurisdiction over Aon. As the Fifth Circuit reasoned in *Panda Brandywine*:

> If we were to accept Appellants' arguments, a nonresident defendant would be subject to jurisdiction in Texas for an intentional tort simply because the plaintiff's complaint alleged injury in Texas to Texas residents regardless of the defendant's contacts, and would

> have to appear in Texas to defend the suit "no matter how groundless or frivolous the suit may be." Such result would completely vitiate the constitutional requirement of minimum contacts and purposeful availment. We refuse to ignore the limits of specific jurisdiction to allow Appellants to sue Appellee in the district court based on Appellants' self-serving allegations when the "potential" injury claimed by Appellants resulted from interference with financing agreements that have nothing to do with Texas except for the mere fortuity that Appellants reside there.

253 F.3d at 870.

Because Beneplace has failed to establish minimum contacts, the Court need not examine whether exercising specific jurisdiction over Aon comports with fair play and substantial justice. *Id.*

### C. Beneplace's Request for Jurisdictional Discovery

Finally, Beneplace seeks jurisdictional discovery to respond further to Aon's arguments. Aon opposes the request, arguing that Beneplace has not stated a prima facie case for personal jurisdiction and additional discovery will not change the outcome, given the undisputed facts as to its contacts with Texas.

As the party opposing dismissal and requesting discovery, Beneplace bears the burden of demonstrating that discovery is necessary. *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013). A plaintiff is not entitled to jurisdictional discovery when the record shows that the requested discovery is not likely to produce the facts needed to withstand a motion to dismiss. *Monkton Ins. Servs., Ltd v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014). Here, the undisputed facts regarding the nature and breadth of Aon's contacts with Texas, coupled with the standard for exercise of general and specific jurisdiction, make it highly unlikely that additional discovery would alter the result. Accordingly, Plaintiff's request for jurisdictional discovery is **DENIED**.

## V. Order and Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant Aon Hewitt Health Market Insurance Solutions Inc.'s Motion to Dismiss (Dkt. 5) and Defendant DaVita, Inc.'s Motion to Dismiss (Dkt. 7) and **DISMISS** this case for lack of personal jurisdiction under Rule 12(b)(2).

The Court **DENIES** Plaintiff Beneplace's Motion for Leave to Conduct Jurisdictional Discovery (Dkt. 14).

The Court further **ORDERS** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## VI. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on July 9, 2021.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE